```
                     UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.                         CASE NO. 8:15-cr-223-T-23TBM
                                December 16, 2015
                                Tampa, Florida
                                8:54 - 9:17 a.m.

EDWIN LEONARDO MENDEZ ARRIAZA,

                Defendant.
_____/


              TRANSCRIPT OF SENTENCING HEARING
                     (Document No. 60)
           BEFORE THE HONORABLE STEVEN D. MERRYDAY
                UNITED STATES DISTRICT JUDGE
```

**APPEARANCES:**

| | |
|---|---|
| For the Government: | WALTER E. FURR III, ESQ.<br>Assistant U.S. Attorney<br>400 N. Tampa Street, Suite 3200<br>Tampa, Florida 33602<br>813/274-6000 |
| For the Defendant: | FRANK W. ZAREMBA, ESQ.<br>Assistant Federal Defender<br>400 N. Tampa Street, Suite 2700<br>Tampa, Florida 33602<br>813/228-2715 |
| Interpreter: | Xavier Keogh |
| Court Reporter: | Howard W. Jones, RPR, FCRR<br>801 N. Florida Avenue, Suite 15A<br>Tampa, Florida 33602<br>813/301-5024 |

Proceedings reported and transcribed by computer-aided stenography.

**P R O C E E D I N G S**

1
2        (Court called to order.)
3        THE COURT: Good morning. Perhaps counsel, the
4   defendant, and the interpreter will step forward to the
5   Clerk's table.
6        Good morning. We are together in Case
7   15-criminal-223, United States of America vs. Edwin Leonardo
8   Mendez Arriaza.
9        I notice the presence of an interpreter and I
10  would ask the Deputy Clerk to administer to him the oath of
11  an interpreter.
12       (Interpreter sworn by the Deputy Clerk.)
13       THE INTERPRETER: I do. Xavier Keogh, K-e-o-g-h.
14       THE COURT: Good morning, Mr. Keogh, and thank you
15  for being with us.
16       Who speaks for the United States?
17       MR. FURR: Good morning, Judge, Terry Furr for the
18  United States. With me is Special Agent Dan Cain from
19  Homeland Security, who is part of the Pan-Ex Task Force.
20       THE COURT: Good morning, Mr. Furr.
21       And good morning, Mr. Cain.
22       And who speaks for the defense?
23       MR. ZAREMBA: Good morning, Your Honor. Frank
24  Zaremba on behalf of the defendant, Mr. Mendez.
25       THE COURT: Good morning, Mr. Zaremba.

1         And you, sir, are Edwin Mendez Arriaza?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  Good morning.  Mr. Mendez, on
4  September 15 of this year you pleaded guilty to Count One of
5  an indictment.  Count One charges you with conspiracy.  In
6  particular, Count One charges a conspiracy to possess with
7  the intent to distribute five kilograms or more of cocaine
8  while aboard a vessel subject to the jurisdiction of the
9  United States, in violation of parts of Section 70503 and
10 70506 of Title 46 of the United States Code.

11        I earlier entered an order that accepts your plea
12 of guilty and adjudges you guilty of the conspiracy that I
13 just described.  So as of this moment, your guilt is
14 determined and it remains to determine your sentence.

15        As I'm sure Mr. Zaremba has explained, I will
16 determine your sentence by first calculating an advisory
17 sentence in accord with the United States Sentencing
18 Guidelines and by next inviting both the United States and
19 the defense to direct my attention to any matter, including
20 those that appear at 18 U.S.C. 3553(a), that I should
21 consider in arriving at a final and reasonable sentence in
22 accord with applicable law.

23        I will begin by asking Mr. Furr if he's had an
24 opportunity on behalf of the United States to review and
25 evaluate the presentence report and, if so, whether the

1  United States objects either to the factual content of the
2  presentence report or to the application of the Sentencing
3  Guidelines that is recommended by the United States
4  Probation Office?
5         MR. FURR:  Judge, I have reviewed the presentence
6  report.  I have no factual argument, nor do I have a
7  guideline application argument with the report.
8         THE COURT:  All right.  Thank you, Mr. Furr.
9         Mr. Zaremba, have you and Mr. Mendez Arriaza had
10 an opportunity together to review and evaluate the
11 presentence report?
12        MR. ZAREMBA:  We have, Your Honor.
13        THE COURT:  Mr. Mendez Arriaza, have you seen this
14 presentence report and discussed it with Mr. Zaremba?
15        THE DEFENDANT:  Yes, sir.
16        THE COURT:  Mr. Zaremba, first, is there an
17 objection to the factual content of the presentence report?
18        MR. ZAREMBA:  Your Honor, we would withdraw our
19 objections, both to factual and legal objections in the PSR.
20        THE COURT:  So --
21        MR. ZAREMBA:  That would be paragraph --
22        THE COURT:  -- that means that there is no
23 objection to the factual content of the presentence report?
24        MR. ZAREMBA:  No, Your Honor.
25        THE COURT:  The plea agreement, in the fact

1  section on page 18, includes the statement that the vessel
2  in which this defendant was a passenger, or at least an
3  occupant, when encountered by the -- I think it was Coast
4  Guard vessel, was approximately 300 nautical miles south of
5  Costa Rica in international waters.
6        That remains a stipulated fact by the defense; is
7  that correct?
8        MR. ZAREMBA:  Yes, Your Honor.
9        THE COURT:  Similarly, Mr. Zaremba, is there an
10 objection for the purposes of the advisory guideline range
11 to the offense level of 33 and the criminal history category
12 of I?
13       MR. ZAREMBA:  There is not, Your Honor.
14       THE COURT:  Then that, as well, is adopted.
15       Mr. Furr, is there a motion on behalf of this
16 defendant under 5K1 or otherwise?
17       MR. FURR:  No, sir.
18       THE COURT:  All right.  In that case, Mr. Zaremba,
19 I will recognize you to advance any matter in mitigation or
20 any matter under 3553 that I should consider in arriving at
21 a final and reasonable sentence.
22       MR. ZAREMBA:  Your Honor, I --
23       THE COURT:  Yes, I read your sentencing
24 memorandum, which appears on the docket at No. 59.
25       MR. ZAREMBA:  I laid out several different factors

1  in my sentencing memorandum that I believe would justify a
2  variance to 120 months.  That's what I'm asking the Court to
3  consider in this particular case, 120 months.
4          What I did not address, and I'll address it just
5  very briefly now, is the sentencing disparity issue on this
6  matter.  There was an individual who received 70 months for
7  basically a 5K1 motion.  My client was similarly situated to
8  that individual, but given the fact he was locked down in
9  the -- and quarantined in the Pinellas County jail with I
10 believe it was a measles outbreak or chickenpox outbreak, he
11 was unable to move forward and do what he had requested very
12 early on, and that is to debrief.  He finds himself then
13 similarly situated in the beginning, in fact ahead of
14 everyone else, the last to be able to do anything.
15         So I would ask, given the factors I indicated in
16 my sentencing memorandum and in the disparity issue, I would
17 ask for a sentence of ten years, 120 months.
18         THE COURT:  Mr. Furr.
19         MR. FURR:  Counsel is correct.  Mr. Zaremba
20 reached out to me almost immediately and informed me that
21 Mr. Arriaza would be pleading and cooperating and I believe
22 the debrief with the case agent had been set up or was
23 getting ready to be set up and the chickenpox outbreak
24 occurred at the jail and I think it kept everybody locked
25 down for a month or so --

UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION

1         THE COURT: It did.

2         MR. FURR: -- and this defendant was unable to
3    meet with anyone. And in the interim someone else, one of
4    the other defendants who was more fortunate in where they
5    were placed in the jail, came in and cooperated and, you
6    know, received a 5K as a consequence of that.

7         So the defendant has been cooperative. He was --
8    we sat down with the agents actually the day he came in and
9    gave a relatively complete statement. I'm sure it's nothing
10   like what they would have talked to him about in terms of
11   what other things he knew and that sort of thing, but the
12   indications were there that he wanted to cooperate.

13        THE COURT: Thank you.

14        MR. FURR: Oh, and the only other thing I would
15   have is I would -- pursuant to the -- regardless of your
16   decision, I would ask you to sentence him at the bottom of
17   the Guidelines or to the extent you can with the statutory
18   restriction here.

19        And, two, post sentencing the government would
20   orally move to dismiss Count Two.

21        THE COURT: Mr. Mendez Arriaza, you do have an
22   opportunity this morning to speak on your own behalf in --
23   you're not required to say anything, of course, but if you
24   would like to say something, I would be happy to hear from
25   you.

```
 1              THE DEFENDANT:  Yes.  Well, first of all, I would
 2   like to say I'm sorry to God and to this country for what I
 3   did.  That's all.
 4              THE COURT:  Thank you, sir.
 5              All right.  Anything further from the United
 6   States?
 7              MR. FURR:  No, sir.  Thank you.
 8              THE COURT:  Any reason not to proceed to sentence?
 9              MR. FURR:  No, sir.
10              THE COURT:  Mr. Zaremba, anything further from the
11   defense?
12              MR. ZAREMBA:  Nothing further, Your Honor.
13              THE COURT:  Any reason not to proceed to sentence?
14              MR. ZAREMBA:  Nothing further, Your Honor.
15              THE COURT:  Pursuant to the Sentencing Reform Act
16   of 1984, to the extent applicable after *United States vs.*
17   *Booker* and pursuant to 18 U.S.C. 3553, Edwin Leonardo Mendez
18   Arriaza is committed to the Bureau of Prisons for 120
19   months.
20              Upon release from imprisonment, the defendant will
21   serve a five-year term of supervised release, during which
22   he will comply with the standard conditions adopted by the
23   Court in the Middle District of Florida and, as well, the
24   special condition that if he is deported, he will not
25   re-enter the United States without the express permission of
```

1  the United States.
2          As a qualifying felon, the defendant will
3  cooperate in the collection of his DNA.
4          I'll waive the drug testing requirements.  I note
5  happily that this defendant is not a user of narcotics or an
6  abuser of alcohol.
7          I'll waive the imposition of a fine, although I
8  levy the special assessment of $100, which is due
9  immediately.
10         I don't believe there's any forfeiture matter
11 outstanding, is there, Mr. Furr?
12         MR. FURR:  No, sir.
13         THE COURT:  And I have considered the policies and
14 Guidelines of the United States Sentencing Commission.  I've
15 considered the applicable guideline range, which we have
16 calculated.  I have considered the applicable statutory
17 requirements and the factors at 18 U.S.C. 3553.
18         Of course, the history of the offender and the
19 history -- and the nature of the offense are perhaps the
20 first two and most prominent factors, in shorthand form, is
21 quite a serious offense.  It's transoceanic transportation
22 of a large quantity of high-purity cocaine conducted at the
23 behest of notorious international criminal organizations,
24 albeit that they utilize often humble fisherman, such as the
25 man in front of us this morning, as their implements to

1  affect their goals.  Nonetheless, this is a large-scale
2  crime.
3              And it is, as was the case here, because there was
4  some pursuit involved and there's endangerment both to the
5  occupants of the so-called go-fast vessel and, as well, to
6  the Coast Guard or Naval personnel who are engaged in
7  interdiction and pursuit.  So this is not a small-scale
8  crime, but a large-scale dangerous crime involving a large
9  quantity of a most destructive substance.  So a serious
10 offense.  The need to foster respect for the law and to
11 protect the public from these sorts of ventures is, of
12 course, a strong consideration in these cases.
13             Also in these cases is the issue of avoiding
14 unwarranted disparity in sentencing.  Two things sort of
15 stand out here.  One, there have been now many score of
16 these cases, and by these cases, I mean these large-quantity
17 transportation cases involving some over-the-seas and
18 over-the-oceans transportation and interdiction by the
19 military.  They almost all are sentenced here in Tampa.  The
20 history of these sentencings suggests with great force that
21 the typical sentence for a crewmen is 135 months and for a
22 captain 168 months.
23             In this particular instance, there's a quantity
24 that's measurably less than is typical of these very
25 large-quantity case.  This was, one, a lot of cocaine here,

1  and it's a lot more than any District Judges ever see in
2  their life in their cases.  But nonetheless, as these cases
3  go from the Pacific and the Caribbean, this case gravitates
4  toward the lower end of that range.  So this sentence
5  probably would normally be 135.
6          In this particular circumstance, the defense
7  counsel has described a singular and extraordinary
8  circumstance and it is confirmed by the United States that
9  the defendant was disposed to and beginning to cooperate
10 when, of all things, he was set upon by chickenpox and
11 became part of a -- of a quarantine.  That does seem to
12 be -- not to be the sort of exigent circumstance that should
13 gravitate against someone receiving credit when they are
14 inclined to and beginning to cooperate.
15         So in light of that and the other matters called
16 to my attention, I have varied the sentence down to 120
17 months.  And it seems to me, in light of all the factors,
18 that it is sufficient, but not greater than necessary, to
19 accomplish the statutory purposes of sentencing and
20 reasonable in all respects, including perhaps most
21 prominently, when measured against similar sentences imposed
22 upon similarly situated defendants.
23         Count Two, Count Two is dismissed -- of the
24 indictment is dismissed in accord with the plea agreement.
25         Does counsel for the United States or the defense

1  object to the sentence or the manner of its announcement?

2  Mr. Furr?

3  MR. FURR:  No, Judge.

4  THE COURT:  Mr. Zaremba?

5  MR. ZAREMBA:  No objections, Your Honor.

6  THE COURT:  The defendant is remanded to the
7  custody of the United States Marshal to await designation by
8  the Bureau of Prisons.

9  If my memory serves, this defendant wants to be
10 housed at a place where he might participate in Unicor or
11 otherwise earn money to return to his destitute family.  And
12 he would, as a second matter, like to reside somewhere where
13 he can pursue his GED, if I remember correctly from the
14 sentencing memorandum.

15 MR. ZAREMBA:  Yes.

16 THE COURT:  So I recommend both of those and the
17 place I think he's willing to go -- he's willing to go where
18 assigned, but I would recommend any residence that would
19 be -- allow him to achieve those two goals.

20 MR. ZAREMBA:  I believe, Your Honor, that Coleman
21 would allow him to do both of those at this point in time.

22 THE COURT:  All right.

23 MR. ZAREMBA:  And I would like to -- normally I
24 ask for Fort Dix or someplace else where it's a better
25 possibility that it's going to be accomplished, but I would

1   like to keep him closer for cooperation purposes.
2          THE COURT: All right. Well, I'll recommend that
3   he be housed at Coleman and I'll rephrase it so that it
4   expresses his interest in those two objectives while living
5   at Coleman.
6          In your plea agreement, Mr. Mendez Arriaza, you
7   have largely waived your right to appeal from this judgment
8   and sentence unless I have sentenced you unlawfully, which
9   typically means above the statutory maximum, above the
10  sentencing Guidelines, or in some unconstitutional manner.
11  I think I have not done that, so I think you have no right
12  of appeal remaining. That, however, is for you and
13  Mr. Zaremba to discuss.
14         To the extent that you have a right of appeal and
15  elect to pursue it, there are two things I need to tell you:
16         First, you do have a right to counsel in any
17  direct appeal. If you can't afford counsel, one would be
18  provided at public expense. As it stands now, Mr. Zaremba
19  and the Office of the Public Defender would be required to
20  pursue -- to preserve and pursue any appeal unless other
21  counsel is substituted by an order of the Court.
22         Secondly, you begin an appeal by filing with the
23  Clerk of this Court a written notice of appeal that is filed
24  within 14 days and that is accompanied by a filing fee. If
25  you have no money and cannot pay that fee, Mr. Zaremba can

1  ask the Court to waive the fee and, if that's granted, you
2  can appeal without payment.
3          Anything further from the United States?
4          MR. FURR:  Just one point, Judge.  I have heard,
5  and I don't know if this is accurate or not, that folks that
6  are here illegally in the United States are not given the
7  same priority in terms of working and making money in
8  prison.  I don't know if that's --
9          THE COURT:  I believe that is correct.  And I'm
10 not even sure they qualify for Unicor, but that --
11         MR. FURR:  Would you place on the record, then,
12 that this defendant is here lawfully.  He was paroled in.  I
13 mean, he didn't want to come in here --
14         THE COURT:  I'm sure he didn't.
15         MR. FURR:  -- we brought him here.  He's here
16 lawfully, so he shouldn't be kept from working.
17         THE COURT:  I will put that into the -- maybe a
18 parenthetical after the recommendation for the residence
19 place, I'll just note that he's here on parole, lawfully on
20 parole.
21         MR. FURR:  Thank you, Judge.
22         MR. ZAREMBA:  And one other matter.  The Court can
23 only make a recommendation.  Ordinarily the Marshals will
24 move him this weekend.  I believe there's a possibility that
25 people want to speak with him from that side.  If we could

1   keep him here an extra week?
2           THE COURT:  You'll have to talk to the Marshal
3   about that.  And I don't have any view about that one way or
4   the other, but my understanding is that's true of almost all
5   these Panama express cases, that they're --
6           MR. FURR:  They're all paroled in, so I'm
7   making --
8           THE COURT:  They're all -- yeah, none of them have
9   come here voluntarily.
10          MR. FURR:  I'm making this same request every time
11  I do the sentencing.  And I'm not sure I need to, but just,
12  you know --
13          MR. ZAREMBA:  You do.
14          THE COURT:  Well, that's a good point.
15          MR. ZAREMBA:  I can tell the Court and Mr. Furr
16  that the only way people paroled in get into a Unicor
17  situation is if they have not paid their special assessment,
18  because they don't have the funds to pay it.  That puts them
19  in line so they can get eventually Unicor.  Otherwise,
20  they're prohibited the same way an illegal re-entry guy
21  would be.
22          THE COURT:  Wow.  Okay.  Thank you.
23          (Proceedings concluded.)
24
25

**C E R T I F I C A T E**

I, Howard W. Jones, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s *Howard W. Jones*
_____
Howard W. Jones, RPR, FCRR
Official Court Reporter
United States District Court
Middle District of Florida
Tampa Division